JOHN E. TIEDT (SBN 134667)
jtiedt@tiedtlaw.com
MARC S. HURD (SBN 130667)
mhurd@tiedtlaw.com
**TIEDT & HURD**
980 Montecito Drive, Suite 209
Corona, California 92879
Telephone: (951) 549-9400
Facsimile: (951) 549-9800

Jordan M. Lewis
jml@kulaw.com
**KELLEY/UUSTAL LAW FIRM**
Courthouse Law Plaza
700 SE 3rd Ave, Third Floor
Ft. Lauderdale, FL 33316
(Pro Hav Vice)

Attorneys for Plaintiff, WILLIAM LANDES

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA-SACRAMENTO DIVISION**

| | |
|---|---|
| WILLIAM LANDES,<br><br>Plaintiff,<br><br>vs.<br><br>SKIL POWER TOOLS, a Division of ROBERT BOSCH TOOL CORPORATION, a Delaware Corporation; ROBERT BOSCH TOOL CORPORATION, a Delaware Corporation; LOWES' HIW, INC., a Washington Corporation; LOWE'S COMPANIES INC., a Delaware Corporation; and DOES 1 through 30, INCLUSIVE,<br><br>Defendants. | **CASE NO.:** 2:12-CV-01252-MCE-KJN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL**<br><br>Hearing Date: December 5, 2013<br>Time: 2:00 p.m.<br>Courtroom: Courtroom #7, 14th Floor<br><br>Hon. MORRISON C. ENGLUND, JR., Chief USDC Judge Presiding |

///

///

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL

LAW OFFICES
TIEDT & HURD

## TABLE OF CONTENTS

**PAGE**

**I. INTRODUCTION/STATEMENT OF FACTS** ........ 2

A. RELEVANT FACTUAL BACKGROUND AND CONTEXT FOR INSTANT MOTION ........ 2

B. RELEVANT PROCEDURAL AND DISCOVERY HISTORY PERTINENT DISCOVERY TO THE INSTANT MATTER ........ 5

**II. ARGUMENT** ........ 9

A. THE COURT SHOULD PERMIT AMENDMENT OF PLAINTIFF'S EXPERT DESIGNATION AS A MODIFICATION TO THE PRE-TRIAL SCHEDULING ORDER. ........ 9

B. THE COURT SHOULD PERMIT MODIFICATION OF PLAINTIFF'S EXPERT DISCLOSURE UNDER *FRCP*, RULE 26(e) ........ 11

C. THE COURT SHOULD, EITHER IN CONJUNCTION WITH GRANTING LEAVE TO AUGMENT PLAINTIFF'S EXPERT LIST OR AS AN ALTERNATIVE THERETO, CONTINUE TRIAL ........ 12

**IV. CONCLUSION** ........ 13

# TABLE OF AUTHORITIES

## CASES

**PAGE**

Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213 (N.D.Ind.1990) .................................... 10

Angle v. Sky Chef, Inc., 535 F.2d 492 (9th Cir. 1976)............................................................ 9

Campbell Industries v. M/V Gemini, 619 F.2d 24 (9th Cir. 1980)......................................... 9, 12

Forstmann v. Culp, 114 F.R.D. 83 (M.D.N.C.1987) ............................................................... 10

Globe Indem. Co. v. Capital Ins. & Sur. Co., 352 F.2d 236 (9th Cir. 1965) ................................ 9

Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463 (D.N.J.1990) ..................... 10

Jeffries v. U. S., 477 F.2d 52, 55 (9th Cir. 1973)...................................................................... 9

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992) ...................................... 10

Metro Ford Truck Sales, Inc. v. Ford Motor Co., 145 F3d 320 (5th Cir. 1998) ......................... 12

Osorio v. One World Technologies, 659 F. 3d 81, 84 (1st Cir. 2011)........................................... 4

Robbins & Myers, Inc. v. J.M. Huber Corp. (WD NY 2011) 274 FRD 63 ................................. 11

Sherman v. United States, 462 F.2d 577, 579 (5th Cir. 1972).................................................. 13

Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc. 272 FRD 350 (WD NY 2011).... 11

## STATUTES

FRCP, Rule 16(b) ........................................................................................................ 9, 10

FRCP, Rule 26(e) ............................................................................................................... 11

## OTHER SOURCES

6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 .......................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, WILLIAM "EARL" LANDES, has been "blind-sided" by his own expert, and by this motion Plaintiff simply seeks to replace this now uncooperative expert with a new one.

## I. INTRODUCTION/STATEMENT OF FACTS

This matter is a product liability/personal injury lawsuit involving Plaintiff's injuries suffered while using a "SkilSaw," Model Number 3305 ("SkilSaw") manufactured by defendant Robert Bosch Tool Corporation ("BOSCH") and sold by Lowes HIW, Inc. ("LOWES"). In his accident, the index finger of Mr. Landes' right hand was amputated from the first knuckle and the middle finger was partially amputated about a quarter inch but "fileted" to the first knuckle.

Plaintiff's main liability argument is that had BOSCH (and indeed other table saw manufacturers) utilized safety technology available to it prior to the time it developed and sold the SkilSaw, such would have eliminated or minimized Plaintiff's injury. More specifically, Plaintiff asserts that if BOSCH had used "flesh-detection" technology available to it, Plaintiff would not have suffered the injuries he sustained, or at least the injuries he would have suffered would not have been as severe. From the outset of this case, Plaintiff has looked and pointed to the availability of "flesh-detection" technology, developed by Dr. Stephen Gass ("Gass") beginning in 2000, almost 10 years before Plaintiff purchased his SkilSaw.

### A. RELEVANT FACTUAL BACKGROUND AND CONTEXT FOR INSTANT MOTION

Gass and BOSCH, it is safe to say, have a complex and long-standing relationship. Gass is a life-long woodworker, a patent attorney and a physicist.[1] In 1999, using a Craftsman table saw bought from a newspaper classified ad and using componentry purchased at a local Radio Shack store[2], Gass built a prototype table saw using what he calls a "contact detection system."

According to Gass, the system works by recognizing differences between the electrical properties of wood and people. The system generates an electrical signal onto the blade and

---

1 See Declaration of Stephen F. Gass ("Gass Declaration"), ¶ 1, attached as Exhibit "A" to the Hurd Declaration.
2 Gass Declaration, ¶ 9.

monitors that signal for changes. "[W]hen a person touches the blade, the signal immediately changes because of the relatively large inherent capacitance and conductivity of the person's body."[3] When the detection system detects contact, a second system (called by Gass the "reaction system") releases a spring by burning a fuse wire with an electrical surge. The spring pushes the brake pawl into the teeth of the table saw spinning blade and stops the blade. Gass estimates that his device stops a saw blade in about 3 milliseconds, or about 100 times faster than a person could react.[4] (A video demonstration of how the saw and its flesh-detection technology works can be seen at https://www.youtube.com/watch?v=cTUOhYcw4ZY.) Since 1999, Gass has obtained multiple patents on his "flesh-detection" technology in the U.S. and in other countries as well.[5]

Gass initially approached the table saw manufacturers to see if any would be interested in entering into a licensing arrangement and employing his technology,[6] first meeting with representatives from a BOSCH-predecessor company on November 10, 2000.[7] Eventually, after licensing negotiations with the all of the manufacturers broke down, Gass decided to build his own competing table saw. By April 2004, Gass had five sample saws for inspection and field testing. Nine years later, Gass' company, SawStop LLC, manufactures and sells three types of table saws that employ the flesh-detection technology: an industrial cabinet saw; a professional cabinet saw, and a contractor saw.[8]

After Gass began marketing his saws with the new flesh-detection technology, BOSCH and other table saw manufacturers "formed a joint venture to develop technology for power saw blade contact injury avoidance, including skin sensing systems, blade braking systems, and/or blade guarding systems."[9] (This testimony has been confirmed by BOSCH representatives, Thomas Siwek and Peter Domeny.) To date, Gass' SawStop remains the only table saw product on the market employing flesh-detection technology, though based on testimony from Messrs. Siwek and

---

[3] Gass Declaration, ¶ 4.
[4] Gass Declaration, ¶ 6.
[5] Gass Declaration, ¶ 8.
[6] Gass Declaration, ¶ 12.
[7] Gass Declaration, ¶ 18.
[8] Gass Declaration, ¶¶ 53-54.

Domeny, it appears that BOSCH is close to launching its own contact avoidance safety device equipped saws.

Gass' relationship with the table saw manufacturers became more complicated after he was retained as an expert in a product liability case commenced by a Massachusetts man named Carlos Osorio, whose left hand was mangled while operating a $179 table saw manufactured by One World Technologies, Inc. and/or Ryobi Technologies, Inc. "Osorio alleged that the manufacturers' failure to incorporate SawStop into their designs is due to a collective understanding that if any of them adopts the technology, then the others will face heightened liability exposure for not doing so as well."[10] After an eight-day trial, a jury awarded Osorio $1.5 million.

On appeal, the 1st Circuit affirmed, specifically finding: (1) that Osorio met his prima facie obligation to present a reasonable alternative table saw design that accounted for weight and cost;[11] and (2) rejected the argument that Osorio's theory implicated "impermissible categorical liability" because the absence of an alternative design is a defining characteristic of categorical liability, and [t]here Osorio's claim was premised on the existence of an alternative design.[12]

Plaintiff's theories in this matter largely echo those advanced in the *Osorio* case. Plaintiff asserts that if BOSCH had used the alternative design to incorporate flesh-detection technology, Plaintiff would not have suffered the injuries he sustained, or at least the injuries he would have suffered would not have been as severe.

Clearly, Gass and his partners at SawStop are competitors of BOSCH (and the other table saw manufacturers) who do not have the technology that Gass believes could dramatically reduce or eliminate the vast majority of disfiguring injuries caused by using standard table saws.

From the outset of this case (indeed even before filing of the case), Plaintiff's counsel had consulted with Dr. Gass, who had agreed that he would (a) assist Plaintiff in this case (and in others), (b) testify on behalf of the plaintiff based on his knowledge of "flesh detection" technology

---

9 Gass Declaration, ¶ 60, attached as part of Exhibit "A" to the Hurd Declaration.
10 *Osorio v. One World Technologies*, 659 F. 3d 81, 84 (1st Cir. 2011).
11 *Id.*, at 85-86
12 *Id.*, at 89

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL

LAW OFFICES TIEDT & HURD

generally and SawStop specifically, (c) testify as to the availability of such flesh detection technology years before the subject SkilSaw was manufactured, and (d) offer opinions related to whether a reasonable alternative table saw design existed at the time that BOSCH manufactured the subject SkilSaw and Plaintiff purchased it.

As explained more fully herein, however, Dr. Gass has been forced to withdraw his support and to withdraw as an expert in this case.

## B. PROCEDURAL HISTORY AND PERTINENT DISCOVERY HISTORY IN THE INSTANT MATTER

Plaintiff filed the instant action on April 6, 2012.

On July 9, 2012, the parties filed/submitted a Joint Status Report and Rule 26(f) Discovery Plan. [Doc. # 27]

BOSCH filed their answer to the Complaint on July 24, 2012.

On August 13, 2012, LOWES answered the Complaint, following the Court's granting of LOWES' partial motion to dismiss (whereby the claims against LOWES based on implied warranty-the Fifth Cause of Action of Plaintiff's Complaint- were dismissed as against LOWES).

The parties then submitted an "Amended Joint Status Report and Rule 26(f) Discovery Plan" on September 14, 2012 [Doc. # 34], and a "Second Amended Joint Status Report and Rule 26(f) Discovery Plan" on November 20, 2012 [Doc. # 35]

On December 21, 2012, the Court issued its Pre-Trial Scheduling Order (hereinafter "PSO"). [Doc. # 37] By this Order, the Court set this matter for trial on March 24, 2014, with a Final Pre-Trial Conference set for January 23, 2014. The PSO also imposed a non-expert discovery cut-off of May 24, 2013. More important to the instant discussion, the Court set July 24, 2013 as the deadline for designating experts.

The PSO further provided that: "An expert witness not appearing on the designation will not be permitted to testify unless the party offering the witness demonstrates: (a) that the necessity for the witness could not have been reasonably anticipated at the time the list was proffered; (b)

that the Court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly made available for deposition." [PSO, page 3, line 7-14]

On January 31, 2013, Plaintiff served his responses to BOSCH's written discovery, identifying Dr. Gass as one of a number of potential witnesses to plaintiff's claims on liability.

On July 24, 2013, pursuant to FRCP, Rule 26(a)(2) and the PSO, Plaintiff served his Expert Disclosure. [Doc. # 43] In this designation, Plaintiff identified his treating medical providers as "Non-Retained (Percipient) Witnesses [Doc. # 43, page 2 line 10 to Page 3, line 11], and also named Dr. Gass in that same category. [Doc. # 43, page 3, line 12 to page 4, line 8] Though arguably not required to do so (since Dr. Gass was identified as a non-retained, percipient witness), but in an abundance of caution to "head off" any objection to Dr. Gass providing potentially expert testimony, Plaintiff provided a report authored by Dr. Gass.[13] As referenced therein, Dr. Gass had not "sought or received compensation for time spent preparing this report."

Thus, in discovery (both in Plaintiff's Initial Disclosures under FRCP, Rule 26(a)(1), and in response to various interrogatories), Plaintiff identified Dr. Stephen Gass ("Gass") as a "percipient" witness to various facts related to Plaintiff's claims.

On August 7, 2013, Defendants BOSCH and LOWES' served a notice of deposition "pursuant to Federal Rule of Civil Procedure, section 30," which purported to set Dr. Gass' deposition for September 9, 2013 in Portland, Oregon, near where Dr. Gass resides. This deposition notice included a document demand which includes 73 separate requests for documents.[14] Plaintiff believes and asserts that the undue burden that this document demand created is evident on its face, and goes far beyond any legitimate litigation purpose. However, this deposition notice for this third party, non-retained witness, was not accompanied by a subpoena, and thus was withdrawn by defense counsel before the September 9, 2013 deposition date.

On September 17, 2013, Plaintiff's counsel received copies of three subpoenas, each apparently issued on September 11, 2013 and issued through the United States District Court in

---

[13] See Gass Declaration, ¶ 1.
[14] See Exhibit "B" to the Hurd Declaration.

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL**

LAW OFFICES
TIEDT & HURD

Oregon, seeking the production of documents from Dr. Gass, in his individual capacity and as a representative of his companies, SawStop, LLC and SD3, LLC. Similar in form and substance, the new subpoenas sought production of documents, in 75 separate categories.[15]

As can be plainly seen from even a cursory review of the document demands and/or the subpoenas, the requests to produce documents is quite broad (plaintiff argues impermissibly over broad), and appears designed specifically by the defense to "make life miserable" for Dr. Gass. The requests include demands that Gass turn over the fruits of almost 15 years of entrepreneurial invention to his competitors, for free. In sum, it appears that the document demands are specifically designed to make Dr. Gass' cooperation with injured Plaintiffs as onerous as possible, to persuade/coerce Dr. Gass from further cooperation with such plaintiffs, or risk having to disclose trade secrets amassed over nearly a decade and half. As set forth below, it appears that the defense has been successful in this litigation tactic.

On or about September 27, 2013, local counsel for Dr. Gass, SawStop, LLC and SD3, LLC, served responses and objections to the subpoenas and the request/demand for documents therein.[16]

Since the service of the original deposition notice served on August 7, 2013, Plaintiff's counsel has been in close contact with Dr. Gass, who referred Plaintiff's counsel to his local corporate attorneys. The contact with Gass and his counsel was to attempt to secure Dr. Gass' cooperation in the production of the records (or to work jointly to seek limitation of the discovery). Throughout these discussions, Dr. Gass and his counsel expressed concern over the impact on his business that disclosure of the documents requested by BOSCH would engender. Initially, Dr. Gass affirmed his desire to assist plaintiff and his counsel. However, based on very recent discussions with Dr. Gass and/or his counsel, Dr. Gass and his counsel have made it clear that Dr. Gass has withdrawn his agreement to cooperate with Plaintiff's counsel in an effort to save his business from having to disclose trade secret information.

---

15 Copies of these subpoenas are attached collectively as Exhibit "C."

16 A copy of the responses and objections to the subpoenas is attached as Exhibit "D."

Upon learning of Gass' refusal to continue as Plaintiff's expert in this case, Plaintiff's counsel immediately began contacting other potential experts. As result of that search, Plaintiff's counsel has agreed to retain Dr. Irving Ojalvo to serve in place of Dr. Gass, assuming the Court herein permits this substitution of experts.

Finally, before filing of the instant motion, Plaintiff's counsel discussed this issue with defense counsel, in an effort to avoid court intervention via this motion. In a telephone conversation on October 25, 2013, Plaintiff's counsel advised defense counsel of Dr. Gass' refusal to cooperate with scheduling of his deposition and of his unwillingness to further serve as an expert on Plaintiff's behalf. Defense counsel was specifically asked, on October 25, 2013, if he would stipulate to permitting Plaintiff to reopen expert discovery so that Plaintiff could designate an expert in lieu of Dr. Gass. Plaintiff's counsel also offered, subject of course to Court approval, to allow for a continuance of trial so as to permit defense counsel ample opportunity to conduct expert discovery based on the substituted expert. Defense counsel was also advised that if he could not stipulate, Plaintiff would have to file a motion.

In an email dated October 28, 2013, Defense counsel responded as follows: "My client's position is that it will not stipulate to the re-opening of expert discovery. Whether, and to what extent, I will be instructed to oppose your motion will depend will depend on the nature of your motion." (A copy of this October 28, 2013 email is attached as Exhibit "E.")

Perhaps exposing the true motivation of BOSCH's efforts vis-à-vis Dr. Gass, in this October 28, 2013 email, Counsel then further provided that if Plaintiff agreed to not call Dr. Gass as a witness at trial, <u>in any capacity</u>, and withdraw him as a non-retained expert, BOSCH would agree not to pursue the motion to compel Dr. Gass to produce his documents. (See Exhibit "D.") Thus, given that defense counsel was unable to agree to a stipulation regarding this expert issue, the instant is necessary.

///

///

///

## II. ARGUMENT

### A. THE COURT SHOULD PERMIT AMENDMENT OF PLAINTIFF'S EXPERT DESIGNATION AS A MODIFICATION TO THE PRE-TRIAL SCHEDULING ORDER

Pursuant to FRCP, Rule 16(b), a Pretrial Scheduling Order ("PSO") shall not be modified except by leave of court upon a showing of good cause. However, "District courts should generally allow amendments of pre-trial orders when 'no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.' (Citations)" [Campbell Industries v. M/V Gemini, 619 F.2d 24 (9th Cir. 1980); see also, Globe Indem. Co. v. Capital Ins. & Sur. Co., 352 F.2d 236(9th Cir. 1965), and Angle v. Sky Chef, Inc., 535 F.2d 492, 495 (9th Cir. 1976), quoting Sherman v. United States, 462 F.2d 577, 579 (5th Cir. 1972).] A pretrial order is not an inexorable decree and may, under proper circumstances, be modified. [Jeffries v. U. S., 477 F.2d 52, 55 (9th Cir. 1973).]

In this case, Plaintiff seeks leave to designate an expert in place of Dr. Gass, and replace him with a new expert, Dr. Irving Ojalvo. To accomplish this goal, Plaintiff seeks an order to amend the PSO to extend or reset the date for expert designation, so as to permit plaintiff to designate Dr. Ojalvo after the original July 24, 2013 deadline initially imposed by the PSO. Alternatively, Plaintiff simply seeks leave of this Court to supplementally designate Dr. Ojalvo in place of Dr. Gass.

No "substantial injury" will inure to the defense, as they have not yet taken Dr. Gass' deposition (or incurred costs associated therewith), and cannot be said to have been "injured" by the issuance of subpoenas. Further, at this point defendants' experts have yet to be deposed either, thus obviating the need for such experts to educate themselves as to Gass' opinions. Thus, if Plaintiff is permitted to designate Dr. Ojalvo in place of Dr. Gass, the defense is in essentially the same position as though Dr. Ojalvo had been designated initially.

On the other hand, if Plaintiff is denied the opportunity to designate a new expert, he will be severely prejudiced on the liability issues in this matter, through no fault of the plaintiff.

Thus, for all these reasons, "good cause" exists for the instant request. Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " [Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992), citing to Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J.1990); Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 217 (N.D.Ind.1990); Forstmann v. Culp,114 F.R.D. 83, 85 (M.D.N.C.1987)and 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence)]

From the outset of this case (indeed since before the filing of the instant action), Plaintiff and his counsel have been diligent, relying upon the cooperation of Dr. Gass to serve as an expert in this matter, and promptly designating him as a witness under Rule 26. As noted from Dr. Gass' report, such was prepared in February 2013, and thus he was prepared to offer his opinions in this case well before the expert disclosure deadline.

However, after being faced with onerous discovery tactics employed by the defense in seeking to have him disclose decades' worth of trade secret information related to his patented "flesh-detection" technology, Dr. Gass has had a change of heart, withdrawn all support for Plaintiff's case, and refused to cooperate in the preparation of this case for trial. The withdrawal by Dr. Gass was and is an event that could not have been foreseen by Plaintiff's counsel, and has left counsel without an expert witness to testify as to key issues related to liability.

These good cause reasons are also consistent with the Court's PSO, which requires "(a) that the necessity for the witness could not have been reasonably anticipated at the time the list was proffered; (b) that the Court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly made available for deposition."

In addition, Plaintiff's counsel has responded as quickly as possible to these developments, and sought out a new expert (Dr. Ojalvo) to replace Dr. Gass. If the relief requested herein is granted, Plaintiff's counsel will promptly make Dr. Ojalvo available for deposition.

LAW OFFICES
TIEDT & HURD

10
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT
PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE
ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT,
AND/OR TO MOTION TO CONTINUE TRIAL

Finally, before filing of the instant motion, Plaintiff's counsel discussed this issue with defense counsel, in an effort to avoid court intervention via this motion. In a telephone conversation on October 25, 2013, Plaintiff's counsel advised defense counsel of Dr. Gass' refusal to cooperate with scheduling of his deposition and of his unwillingness to further serve as an expert on Plaintiff's behalf. Defense counsel was specifically asked, on October 25, 2013, if he would stipulate to permitting Plaintiff to reopen expert discovery so that Plaintiff could designate an expert in lieu of Dr. Gass. Defense counsel was also advised that if he could not stipulate, Plaintiff would have to file a motion. In an email dated October 28, 2013, Defense counsel responded as follows: "My client's position is that it will not stipulate to the re-opening of expert discovery. Whether, and to what extent, I will be instructed to oppose your motion will depend will depend on the nature of your motion." (A copy of this October 28, 2013 email is attached as Exhibit "E.")

B. THE COURT SHOULD PERMIT MODIFICATION OF PLAINTIFF'S EXPERT DISCLOSURE UNDER FRCP, RULE 26(e)

A party who has complied with early disclosure requirements or who has responded to discovery demands from opposing parties is under a duty to supplement or correct the disclosure or discovery response to include information later acquired. [FRCP 26(e)] The duty to supplement or correct prior disclosures or discovery responses arises "if the party learns that *in some material respect* the disclosure or response is *incomplete* or *incorrect*." [FRCP 26(e)(1)(A) (emphasis added); Robbins & Myers, Inc. v. J.M. Huber Corp. (WD NY 2011) 274 FRD 63, 73–81] The duty to supplement or correct earlier discovery responses continues even after the close of scheduled discovery. [Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc. (WD NY 2011) 272 FRD 350, 358—"the duty to supplement continues even following the close of discovery"]

At least one court has noted that "[t]he purpose of supplementary disclosures is just that-to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." [Metro Ford Truck Sales, Inc. v. Ford Motor Co. 145 F3d 320, 324 (5th Cir. 1998)] However, Plaintiff herein fully complied with the PSO and the expert disclosures. It was only after (well after) the deadline for expert disclosures, and only after the

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL

LAW OFFICES TIEDT & HURD

defense sought to have Dr. Gass disclose trade secret information, that Dr. Gass first informed Plaintiff's counsel that he would no longer serve as an expert. Thus, Plaintiff herein does not seek to extend a deadline that he "missed" or ignored. Rather, Plaintiff seeks Court intervention to impose a new expert disclosure deadline based on facts that could not have been reasonably anticipated at the time of the initial disclosure. (Indeed, if Dr. Gas had-heaven forbid-died after the July 24, 2013 expert disclosure deadline, Plaintiff would be justified in seeking leave to substitute a new expert. The effect is the same; Dr. Gass is no longer available, and must be replaced through no fault of the plaintiff.)

C. THE COURT SHOULD, EITHER IN CONJUNCTION WITH GRANTING LEAVE TO AUGMENT PLAINTIFF'S EXPERT LIST OR AS AN ALTERNATIVE THERETO, CONTINUE TRIAL

As noted above, "District courts should generally allow amendments of pre-trial orders when 'no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.' (Citations)" [Campbell, *supra*, 619 F.2d 24, 27-28 (9th Cir. 1980)] Trial in this case was set for March 24, 2014, pursuant to the PSO issued on December 21, 2012.

In order to permit time for the defense to depose Dr. Ojalvo and otherwise prepare for trial, Plaintiff seeks to continue the trial date for a period of 90-120 days. The trial calendar for Plaintiff's counsel includes trials in other matter set for April 1, 2014, May 5, 2014 and May 13, 2014. However, thereafter, the trial calendar for Plaintiff's counsel is, at present, largely "clear" for the summer of 2014, at least until October 2014. Thus, Plaintiff requests that trial be re-set for some time after mid-June 2014.

## III. CONCLUSION

For all the foregoing reasons, and based on the authorities referenced herein, Plaintiff respectfully requests that this Court grant his request for leave to designate a new expert in place of Dr. Stephen Gass, timely designated on July 24, 2013. Plaintiff seeks to replace Dr. Gass with

Dr. Irving Ojalvo, who has agreed to serve as Plaintiff's expert in place of Dr. Gass. Such relief, as set forth above, can and should be granted under the authority stated herein.

Alternatively, or more realistically in conjunction with, by this request to designate a new expert, Plaintiff requests that the Court order that trial of this matter be continued, to a date convenient to the Court's calendar in the summer of 2014.

Respectfully submitted.

DATED: November 6, 2013

**TIEDT & HURD**

By: [signature]
JOHN E. TIEDT
MARC S. HURD

-and-

JORDAN M. LEWIS (FL Bar No.: 97997)
**KELLEY/UUSTAL, PLC**
(*Pro hac vice*)

Attorneys for Plaintiff,
WILLIAM LANDES

## PROOF OF SERVICE

**STATE OF CALIFORNIA** )
) **ss.**
**COUNTY OF RIVERSIDE** )

I, JILL HUSK, state that I am employed in the aforesaid County, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 980 Montecito Drive, Suite 209, Corona, CA 92879.

On November 7, 2013, I served the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE OR IN THE ALTERNATIVE TO AMEND PRE_TRIAL CONFERENCE ORDER AND?OR MOTION TO CONTINUE TRIAL on the interested parties by placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Corona, California, addressed as follows and/or by one of the methods of service as follows:

**[SEE ATTACHED SERVICE LIST]**

_X_ **BY MAIL**: I am readily familiar with this firm's practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service the same day in the ordinary course of business pursuant to C.C.P. 1013(a).

___ **BY FAX**: In addition to service by mail as set forth above, a copy of said document(s) were also delivered by facsimile transmission to the addressee pursuant to C.C.P. 1013(e).

___ **BY PERSONAL SERVICE**: I hand-delivered said document(s) to the office of the addressee, using an attorney service, pursuant to C.C.P. 1011.

_X_ **BY E-SERVICE** as directed pursuant to the United States District Court CM/ECF rules.

___ **BY EXPRESS MAIL**: I caused said document(s) to be placed in an Express Mail Overnight Envelope and deposited in an Express Mail DropBox to be delivered the following business day pursuant to C.C.P. 1013(c).

☐ [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 11, 2012, at Corona, California.

☒ [Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on November 7, 2013, at Corona, California.

JILL HUSK

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO AUGMENT PLAINTIFF'S EXPERT DISCLOSURE, OR IN THE ALTERNATIVE, TO AMEND PRE-TRIAL CONFERENCE ORDER TO ALLOW PLAINTIFF TO WITHDRAW EXPERT AND NAME A NEW EXPERT, AND/OR TO MOTION TO CONTINUE TRIAL

LAW OFFICES
TIEDT & HURD

**SERVICE LIST**
Landes v. Skil Power Tools, et al.
US District Court Case No. 2:12-CV-01252-MCE-KJN

Jack B. McCowan, Jr.
Gordon & Rees, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
(415) 986-5900
(415) 986-8054
**Email:** jmccowan@gordonrees.com

**Counsel for Defendants, ROBERT BOSCH TOOL CORPORATION; LOWE's HIW, INC.**

Mr. Jordan Lewis
Kelley/Uustal Law Firm
700 SE 3rd Avenue, Third Floor,
Fort Lauderdale, FL 33316
(954) 522-6601; (954) 522-6608 FAX
Email: jml@kulaw.com

**Co-Counsel for Plaintiff, WILLIAM LANDES**