UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LANDES, | No.  2:12-cv-01252-MCE-KJN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| SKIL POWER TOOLS, et. al., | |
| Defendants. | |

On November 7, 2013, Plaintiff William Landes ("Plaintiff"), moved to augment his expert disclosure or in the alternative, to amend the pre-trial conference order to allow Plaintiff to withdraw an expert and name a new expert witness ("Motion").  Mot., Nov. 7, 2013, ECF No. 47.  Plaintiff also moved to continue trial to a later date.[1]  Id.  For the following reasons, Plaintiff's Motion is GRANTED.[2]

///

///

---

[1] On December 17, 2013, on the Court's own motion and pursuant to Local Rule 230(g), the Final Pretrial Conference set for 1/23/2014 and the Jury Trial set for 3/24/2014 were vacated.  See ECF No. 53. As set forth in this order, the Court will issue an amended final pretrial order indicating the date of the rescheduled pretrial conference, as well as a new trial date.

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

1

1

2

# BACKGROUND[3]

3

Plaintiff alleges that he was injured while using a "SkilSaw" device manufactured

4
by Defendant Robert Bosch Tool Corporation ("Bosch") and sold by Defendant Lowes'

5
HIW, Inc. ("Lowes") (collectively "Defendants").  Plaintiff contends that had Bosch utilized

6
safety technology available to it prior to the time it developed and sold the SkilSaw,

7
Plaintiff's injury would have been eliminated or minimized.  Specifically, Plaintiff asserts

8
that if Bosch had used "flesh-detection" technology such as that developed by Dr.

9
Stephen Gass, Plaintiff's injuries would not have occurred or at least not have been as

10
severe.

11
According to Plaintiff, Dr. Gass initially agreed that he would assist Plaintiff in this

12
case by testifying as a percipient witness about his knowledge of "flesh detection"

13
technology generally and Gass's company, SawStop, specifically and the availability of

14
such flesh detection technology; and would offer opinions related to whether a

15
reasonable alternative table saw designed existed at the time that Bosch manufactured

16
the SkilSaw.

17
Dr. Gass subsequently received three subpoenas from Defendants seeking the

18
production of documents in his individual capacity and as a representative of his

19
companies (SawStop and SD3).  Plaintiff contends that the subpoenas were overly

20
broad, intended to make Dr. Gass's life "miserable," and were designed to be as onerous

21
as possible because they sought production of documents in seventy-five separate

22
categories.

23
Plaintiff reports that Dr. Gass and his counsel expressed concern over the impact

24
that disclosure of the requested documents might have on Dr. Gass's business, which

25
competes directly with that of Bosch.

26
///

27

28
[3] Unless otherwise noted, the following recitation of facts is taken from Plaintiff's Memorandum in Support of his Motion and Plaintiff's Reply.  See ECF Nos. 45, 50.

1    Bosch contends that its subpoenas were proper because Dr. Gass's company is a

2    competitor and these documents would show not only bias on Dr. Gass's part but also

3    that many of his statements about the technical feasibility and economic viability of

4    bench-top table saws are not true.  Response, Nov. 20, 2013, ECF No. 49.  Defendants

5    offered to sign a "for attorney's eyes only" protective order with respect to these

6    documents.  Id.

7         According to Plaintiff, Dr. Gass subsequently withdrew from his agreement to

8    cooperate with Plaintiff's counsel to prevent the disclosure of trade secret information.

9    As a result, Plaintiff's counsel retained Dr. Irving Ojalvo to serve in place of Dr. Gass if

10   the Court permits the substitution of experts.

11        The Pre-Trial Scheduling Order ("PTSO") in this case imposed a non-expert

12   discovery cut-off of May 24, 2013, and a July 24, 2013, deadline for designating experts.

13   PTSO, Dec. 20, 2012, ECF No. 37.  On January 31, 2013, Plaintiff identified Dr. Gass as

14   a potential witness in his response to Bosch's written discovery.  On July 24, 2013,

15   Plaintiff served his expert witness disclosure pursuant to Federal Rule of Civil

16   Procedure[4] 26(a)(2) in which he listed Dr. Gass as a "non-retained (percipient) witness."

17   ECF No. 43.  Plaintiff stated that "Dr. Gass has information concerning defendants'

18   failure to utilize available safer technology in their saws. . . . Though Dr. Gass has not

19   been 'retained or specially employed to provide expert testimony,' as set forth in [Rule

20   26(b)(2)], a copy of Dr. Gass' report prepared regarding his opinions which may be

21   offered at the time of trial is attached hereto as Exhibit '1.'"  Id.  Plaintiff contends that the

22   report was included "in an abundance of caution to 'head off' any objection to Dr. Gass

23   providing potentially expert testimony."

24   ///

25   ///

26   ///

27   _____

28   ⁴ All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1    Plaintiff now seeks (1) to amend Plaintiff's expert designation as a modification to

2  the pre-trial scheduling order, (2) to modify Plaintiff's expert disclosure under Rule 26(e),

3  and (3) continue trial, either as an alternative to or in conjunction with granting leave to

4  augment Plaintiff's expert list.

5                                            **STANDARD**

6

7    Generally, the Court is required to enter a pretrial scheduling order within 120

8  days of the filing of the complaint.  Fed. R. Civ. P. 16(b).  The scheduling order "controls

9  the subsequent course of the action" unless modified by the Court.  Fed. R. Civ. P.

10  16(e).  Orders entered before the final pretrial conference may be modified upon a

11  showing of "good cause," Fed. R. Civ. P. 16(b), but orders "following a final pretrial

12  conference shall be modified only to prevent manifest injustice," Fed. R. Civ. P. 16(e);

13  see also Johnson v. Mammoth Recreations, 975 F.2d 604, 608 (9th Cir. 1992).

14    Rule 16(b)'s "good cause" standard primarily considers the diligence of the party

15  seeking the amendment.  Johnson, 975 F.2d at 609.  The district court may modify the

16  pretrial schedule "if it cannot reasonably be met despite the diligence of the party

17  seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983

18  amendment); Id.  Moreover, carelessness is not compatible with a finding of diligence

19  and offers no reason for a grant of relief.  Johnson, 975 F.2d at 609.  Although the

20  existence or degree of prejudice to the party opposing the modification might supply

21  additional reasons to deny a motion, the focus of the inquiry is upon the moving party's

22  reasons for seeking modification.  Id. (citing Gestetner Corp. v. Case Equip. Co., 108

23  F.R.D. 138, 141 (D. Me. 1985)).  If the moving party was not diligent, the Court's inquiry

24  should end.  Id.

25  ///

26  ///

27  ///

28  ///

1

**ANALYSIS**

2

3       Plaintiff seeks to amend Plaintiff's expert designation as a modification to the

4    PTSO, to modify Plaintiff's expert disclosure under Rule 26(e), and continue trial (either

5    as an alternative to or in conjunction with granting leave to augment Plaintiff's expert

6    list).  Specifically, Plaintiff seeks leave to designate Dr. Irving Ojalvo as an expert

7    witness in place of Dr. Gass.  The PTSO imposed a non-expert discovery cut-off of May

8    24, 2013, and a July 24, 2013, deadline for designating experts.  See PTSO at 2.

9    Because the deadlines for non-expert discovery and for designating experts have

10   passed, Plaintiff seeks to modify the PTSO to extend or reset the date for expert

11   designation.  Alternatively, Plaintiff seeks leave to supplementally designate Dr. Ojalvo in

12   place of Dr. Gass.

13       As detailed above, Plaintiff reports that his initial choice for an expert witness at

14   trial, Dr. Stephen Gass, withdrew from his agreement to cooperate with Plaintiff's

15   counsel and now Plaintiff seeks to substitute Dr. Gass with Dr. Irving Ojalvo.  Although

16   Plaintiff seeks to call Dr. Ojalvo as an expert witness, Plaintiff asserts that he may

17   nevertheless still call Dr. Gass as a witness at trial via subpoena.  Defendants state that

18   they have no objection to Plaintiff replacing Dr. Gass with Dr. Ojalvo, but Defendants are

19   concerned about the scope of Dr. Gass's testimony as a non-expert witness at trial.

20       "A scheduling order is not a frivolous piece of paper, idly entered, which can be

21   cavalierly disregarded by counsel without peril."  Johnson, 975 F.2d at 610.  "Disregard

22   of the order would undermine the court's ability to control its docket, disrupt the agreed-

23   upon course of the litigation, and reward the indolent and the cavalier."  Id.  As such,

24   under Rule 16(b)(4), a scheduling order may be modified only for good cause and with

25   the judge's consent.

26   ///

27   ///

28   ///

1    District courts "should generally allow amendments of pre-trial orders provided

2    three criteria are met: (1) no substantial injury will be occasioned to the opposing party,

3    (2) refusal to allow the amendment might result in injustice to the movant, and (3) the

4    inconvenience to the court is slight."  Amarel v. Connell, 102 F.3d 1494, 1515 (9th Cir.

5    1996) (internal citations omitted); see also 3 Moore's Federal Practice § 16.14[b] (2003)

6    ("'[G]ood cause' is likely to be found when the moving party has been generally diligent,

7    the need for more time was neither foreseeable nor its fault, and refusing to grant the

8    continuance would create a substantial risk of unfairness to that party.").

9    
10
11
12
13
14

>    A court's evaluation of good cause is not coextensive with an
>    inquiry into the propriety of the amendment under . . . Rule
>    15.    Unlike Rule 15(a)'s liberal amendment policy which
>    focuses on the bad faith of the party seeking to interpose an
>    amendment and the prejudice to the opposing party, Rule
>    16(b)'s "good cause" standard primarily considers the
>    diligence of the party seeking the amendment. The district
>    court may modify the pretrial schedule "if it cannot reasonably
>    be met despite the diligence of the party seeking the
>    extension."  Moreover, carelessness is not compatible with a
>    finding of diligence and offers no reason for a grant of relief.

15   Johnson, 975 F.2d at 609 (internal citations omitted); see 6A Wright, Miller & Kane,

16   Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990) ("good cause" means

17   scheduling deadlines cannot be met despite party's diligence).  However, "[t]he use of

18   the good-cause standard, rather than allowing modification only in cases of manifest

19   injustice as is done for other pretrial orders, indicates that there may be more flexibility in

20   allowing some relief."  6A Wright, Miller & Kane, Federal Practice and Procedure

21   § 1522.2 (3d ed.).  Where "[a] scheduling order can have an outcome-determinative

22   effect on the case . . . total inflexibility is undesirable."  Rimbert v. Eli Lilly & Co., 647

23   F.3d 1247, 1254 (10th Cir. 2011).  "A scheduling order which results in the exclusion of

24   evidence is . . . a drastic sanction."  Id.

25   ///

26   ///

27   ///

28   ///

1    Here, Plaintiff brought the instant Motion with reasonable diligence.  Plaintiff

2    purports to have begun searching for a new expert witness and conferring with

3    Defendants immediately upon learning that Dr. Gass would no longer adhere to his

4    agreement with Plaintiff.  Cf.  Johnson, 975 F.2d at 609 (concluding that good cause did

5    not exist where the moving party's failure to timely request a scheduling order

6    amendment resulted from his own inaction).  Because Plaintiff acted diligently in bringing

7    his motion to amend the PTSO to allow Plaintiff to withdraw an expert and name a new

8    expert, this Court will analyze each of the three criteria outlined in Amare.  See 102 F.3d

9    at 1515.

10                    **1.      Injury to Opposing Party**

11

12    When evaluating whether to allow amendments of pre-trial orders, a court will first

13    examine whether there will be a substantial injury to the opposing party.  See Amarel,

14    102 F.3d at 1515.

15    Here, Plaintiff contends that because the Defendants have not taken Dr. Gass's

16    deposition, replacement of Plaintiff's expert witness does Defendants no harm.

17    Defendants do not object to the substitution of Dr. Ojalvo in place of Dr. Gass on the

18    basis of any substantial injury that Defendants would face.  Instead, Defendants' primary

19    concern is that Plaintiff will, despite substituting Dr. Ojalvo for Dr. Gass, nevertheless call

20    Dr. Gass as a fact witness and seek to elicit opinion testimony.  Defendants state that

21                    [i]f [P]lantiff agrees to withdraw Dr. Gass as a non-retained
                     expert, and not ask any expert opinions of Dr. Gass at trial,
22                   [D]efendants have no objection to [P]laintiff's motion, if
                     [P]laintiff can only designate Dr. Irving Ojalvo in place of Dr.
23                   Gass, and the Court agrees to a reasonable continuance of
                     the trial date and an appropriate adjustment of the pretrial
24                   scheduling order.

25    Response, ECF No. 49 at 2.  Defendants therefore ask that should Dr. Gass be called as

26    a witness, his potential testimony should be limited testimony to that of a fact witness

27    who would not be questioned about his opinions or permitted to offer such opinion.

28    ///

1    To support their position, Defendant points to several of Dr. Gass's opinions in the expert

2    report submitted by Plaintiff which Defendant contends should not be allowed if Dr. Gass

3    is called as a "percipient" witness at trial.

4           Plaintiff responds to this concern by noting that if Plaintiff calls Dr. Gass to testify

5    at trial, he would be questioned "as a percipient fact witness."  Plaintiff concedes that

6    while discrete sections of Gass's Declaration could be deemed "expert" opinion, the vast

7    majority of the declaration addresses factual matters about which Dr. Gass may properly

8    be called to testify.  Plaintiff asserts that "[t]o the extent that Dr. Gass is called to testify,

9    such testimony will necessarily be limited to factual matters."  Reply, Nov. 25, 2013, ECF

10   No. 50.

11          The Court recognizes Defendants' concern that Plaintiff may be attempting to

12   circumvent expert disclosure requirements by attempting to use Dr. Gass at trial as an

13   expert witness although called as a fact witness.  This concern is one that courts have

14   repeatedly acknowledged.  See 8A Fed. Prac. & Proc. Civ. § 2031.1 (3d ed.) ("Courts

15   have had to be alert to efforts to smuggle expert testimony into the case without

16   complying with [the proper] requirements by characterizing it as lay testimony.").

17   However, Defendants' concern is premature.  Should Defendants timely object to the

18   scope of Dr. Gass's potential testimony through a motion in limine and/or an objection at

19   trial, these concerns may be addressed at that time.[5]

20   ///

21   ///

22          [5] Plaintiff has represented to this Court that "[t]o the extent that Dr. Gass is called to testify, such

23   testimony will necessarily be limited to factual matters."  Reply, Nov. 25, 2013, ECF No. 50.  Should
     Plaintiff call Dr. Gass as a non-expert, percipient fact witness, Plaintiff shall bear in mind the Federal Rules
     of Evidence which govern lay and expert testimony—in particular Rule 701.  "Within a district court's broad

24   discretion lies both the power to exclude or admit expert testimony, and to exclude testimony of witnesses
     whose use at trial is in bad faith or would unfairly prejudice an opposing party."  Amarel, 102 F.3d at 1515.

25   As the Committee Notes to the 2000 amendments to the Federal Rules of Evidence observe, "[b]y
     channeling testimony that is actually expert testimony to Rule 702, the [Rules now] ensure[] that a party

26   will not evade the expert witness disclosure requirements set forth in Fed. R. Civ.P. 26 . . . by simply
     calling an expert witness in the guise of a layperson."  Committee Notes to Fed. R. Evid. 701; see Keener

27   v. United States, 181 F.R.D. 639, 641 (D. Mont. 1998) (noting that expert preclusion is one possible
     remedy for failure to comply with Rule 26 in the Ninth Circuit).

28

1    Finally, Defendants request that if Plaintiff is permitted to withdraw Dr. Gass as a

2  non-retained expert witness and to designate Dr. Ojalvo in his place, the PTSO be

3  modified to set a date for the designation of Dr. Ojalvo and the production of his Rule 26

4  expert report.  Defendants further request that a new date for the completion of expert

5  depositions be incorporated into the PTSO along with other necessary changes,

6  including the rescheduling of the pretrial conference and related deadlines. [6]

7    The Court finds that granting Plaintiff's motion to amend the PTSO to allow

8  Plaintiff to withdraw an expert and name a new expert will not cause Defendants a

9  substantial injury.

10    **2.    Injustice to the Movant**

11

12    Next, a court will examine whether refusal to allow the amendment might result in

13  injustice to the movant.  See Amarel, 102 F.3d at 1515.

14    Plaintiff asserts that if he cannot appoint a new expert, he will be severely

15  prejudiced on the liability issues in the matter.  The crux of Plaintiff's argument is that

16  had Defendant Bosch utilized safety technology available to it prior to the time it

17  developed and sold the SkilSaw, Plaintiff's injury would have been eliminated or

18  minimized.

19    Because Plaintiff's case depends largely on his ability to demonstrate that had

20  Bosch used "flesh-detection" technology, Plaintiff's injuries would not have occurred or at

21  least not have been as severe, if Plaintiff were unable to present expert testimony

22  regarding safety technology as it relates to the product in question, he may be severely

23  prejudiced.

24  ///

25

26    [6] As to Defendants' remaining concerns, as set forth in this Order, Plaintiff's Amended Expert
Witness Disclosure and accompanying written report must be filed by Plaintiff within ninety (90) days of the
date this order is filed.  Counsel are instructed to complete all discovery of expert witnesses in a timely
27  manner in order to comply with the Court's deadline for filing dispositive motions which will be indicated in
a forthcoming amended final pretrial order.  The amended final pretrial order will indicate the deadline for
28  filing dispositive motions, the date of the rescheduled pretrial conference, and a new trial date.

1    This Court finds that in light of the circumstances surrounding Plaintiff's Motion, namely

2    the fact that Defendants will not suffer a substantial injury and Plaintiff's diligence in

3    bringing this motion, the potential injustice to Plaintiff if the Court denied Plaintiff's Motion

4    is sufficient to warrant an amendment of the PTSO.

5

6                          **3.      Inconvenience to the Court**

7

8          Finally, a court will examine the extent of the inconvenience to the court when

9    evaluating whether to allow amendments of pre-trial orders.  See Amarel, 102 F.3d at

10   1515.

11         As the parties recognize, permitting Plaintiff to withdraw Dr. Stephen Gass as an

12   expert witness and replace him with Dr. Irving Ojalvo will require the Court to vacate the

13   trial date and issue an amended final pretrial order.  The Court finds that this is a slight

14   inconvenience which does not warrant denying Plaintiff's request.

15         Therefore, the Court finds that Plaintiff presented good cause to allow for an

16   amendment of the PTSO and continue the trial to a later date.

17         The Final Pretrial Conference, which was scheduled for January 23, 2014, and

18   the Jury Trial, which was scheduled for March 24, 2014, were previously vacated by this

19   Court.  See ECF No. 53.  Although Plaintiff requests that the trial be re-set for some time

20   after mid-June 2014 and Defendants request that the trial be continued to either late

21   April or to July 2014, the Court will set a new trial date after considering its calendar.

22   The Court will issue an amended final pretrial order designating a new trial date.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion (ECF No. 47) to amend the pre-trial conference order to allow Plaintiff to withdraw Dr. Stephen Gass as an expert witness and add Dr. Irving Ojalvo as an expert witness.

No other additional experts may be added or substitutions made without securing leave of this Court and the parties are reminded that the deadline for designating experts passed in July 2013.  In replacing Dr. Gass with Dr. Ojalvo, Plaintiff must now file and serve an Amended Expert Witness Disclosure pursuant to Rule 26.  The designation shall be accompanied by a written report prepared and signed by the witness. The report shall comply with Rule 26(a)(2)(B).  The Amended Expert Witness Disclosure and accompanying written report must be filed by Plaintiff within ninety (90) days of the date this order is filed.  Counsel are instructed to complete all discovery of expert witnesses in a timely manner in order to comply with the Court's deadline for filing dispositive motions which will be indicated in a forthcoming amended final pretrial order.

As set forth above, the Court will issue an amended final pretrial order indicating (1) the deadline for filing dispositive motions, (2) the date of the rescheduled pretrial conference, and (3) a new trial date.

IT IS SO ORDERED.

Dated:  December 26, 2013

_____

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT